| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
|---|---|

------------------------------------------------------------ x
                                                 :        Chapter 11

In re                                            :        Case No. 09-16142 (AJG)

ASSET RESOLUTION LLC, *et al.,*           :        (Jointly Administered)

                          Debtors.               :

------------------------------------------------------------ x

## OPINION GRANTING MOTIONS TO TRANSFER VENUE

On October 14, 2009, Asset Resolution LLC, *et al.,* ("Asset Resolution") and 14 special purpose entities (the "SPEs")(collectively, the "Debtors") filed a voluntary petition in this Court for relief under chapter 11 (the "Chapter 11 Case") of the United States Bankruptcy Code.

Before the Court is (i) a Motion by certain direct lenders (the "Moving Direct Lenders")[1] seeking an order from the Court to transfer venue pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014 (the "Moving Direct Lender Motion"); (ii) a Motion of the United States Trustee ("US Trustee"), pursuant to 28 U.S.C. §§ 1408 and 1412, to Dismiss the Cases for Lack of Venue or, in the Alternative, Transfer Cases to the District of Nevada ("US Trustee Motion"); (iii) the Joinder in Motion to Transfer Venue filed by USACM Liquidating Trust ("USACM Motion"); and (iv) the Joinder in Motion for Transfer of Venue and Memoranda of Point and Authorities in Support filed by Debt Acquisition Company of America V, LLC and Eagle Investment Partners, L.P. ("Debt

---

[1] The Moving Direct Lenders include Arthur Kriss, Daniel Newman, Donald Pinsker, and Anthony Zerbo. At the Hearing (defined *infra*); however, counsel representing the Moving Direct Lenders asserts that he has obtained signatures from approximately another 800 similarly situated direct lenders who consented to his firm's representation of them in the Debtors' Chapter 11 Case.

Acquisition Motion") (together with the Moving Direct Lender Motion, the US Trustee Motion, and the USACM Motion, the "Motions"). The Moving Direct Lenders, the US Trustee, the USACM Liquidating Trust, Debt Acquisition Company of America V, LLC, and Eagle Investment Partners, L.P. are collectively referred to herein as the Movants.

The Debtors filed an opposition to the Motions (the "Opposition") on November 9, 2009. An objection (the "Objection") by the Official Committee of Unsecured Creditors of the Debtors (the "Committee") to the Motions was filed on November 10, 2009.

A hearing on this matter was held on November 12, 2009 (the "Hearing").

*Background*

The direct lenders (the "Direct Lenders") are fractional beneficial interest holders in various short-term commercial mortgage investment loans (the "Loans") that were originated and serviced by USA Commercial Mortgage Company ("USACM") under certain loan servicing agreements ("LSAs") executed between the individual Direct Lenders and USACM.[2]

On April 13, 2006, USACM filed for chapter 11 protection in Nevada and, as part of its plan of reorganization, sold certain assets including: (i) the right to service certain defaulted commercial mortgage loans and collect the attendant servicing fees, and (ii) fractionalized interests in the real property securing those loans, to Compass Financial Partners LLC and Compass USA SPE LLC (collectively, "Compass"). Compass's purchase of these assets was financed, through a repurchase agreement, by Silar Advisor LP and Silar Special Opportunities Fund, LP (collectively, "Silar"). When Compass

---

[2] The Debtors have alleged that there are more than 2,400 Direct Lenders invested in the Loans. The Debt Acquisition Motion alleges that about 3,600 Direct Lenders were at one time assigned interests in 115 Loans.

defaulted on its payment obligations to Silar, Silar created Asset Resolution, and Asset Resolution took title as servicer to the Loans and related agreements.[3]

Beginning in May 2007, extensive litigation was commenced in Nevada District Court and Nevada State Court involving Compass, Silar, Asset Resolution and thousands of Direct Lenders ("Nevada Litigation") with respect to, *inter alia,* the ability of the Direct Lenders to terminate the loan servicer under the LSAs without cause under Nevada law.

*Discussion*[4]

28 U.S.C. § 1408 ("section 1408") provides that a case under title 11 may be commenced in the district court;

> for the district: (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

---

[3] The SPEs are Asset Resolution's single purpose subsidiaries, which include: Bundy Five Million LLC, Bundy 2.5 Million SPE LLC, CFP Anchor B SPE LLC, CFP Cornman Toltec SPE LLC, CFP Gess SPE LLC, CFP Gramercy SPE LLC, Fiesta Stoneridge LLC, Fox Hills SPE LLC, HFAH Monaco SPE LLC, Huntsville SPE LLC, Lake Helen Partners SPE LLC, Ocean Atlantic SPE LLC, Shamrock SPE LLC, and 10-90 SPE LLC.

[4] The US Trustee Motion was premised, in part, on New York being an improper venue. However, upon reviewing supplemental information provided in the Debtors' Opposition, the US Trustee no longer contests that New York constituted proper venue and withdrew the portion of the US Trustee Motion to Dismiss the Cases for Lack of Venue. There is no longer any dispute concerning New York being a proper venue; and the Court concludes that New York is a proper venue of the Debtors. Therefore, the discussion herein is limited to whether venue transfer is warranted in a case that has proper venue.

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

*28 U.S.C. § 1408.*

Pursuant to 28 U.S.C. § 1412 ("section 1412"), a court must grant relief if it is established either that the transfer of venue is in the "interest of justice" or "for the convenience of the parties." Section 1412 is written in the disjunctive, which means "interest of justice" and "convenience of parties" are each independent grounds for transferring venue. *In re Dunmore Homes, Inc.,* 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008).

Federal Rules of Bankruptcy Procedure 1014(a), entitled Dismissal and Transfer of Cases, provides:

(1) Cases Filed in Proper District. If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

(2) Cases Filed in Improper District. If a petition is filed in an improper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may dismiss the case or transfer it to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

*Fed. Rules of Bankr. Pro. 1014.*

In considering the convenience of the parties under section 1412, courts most commonly analyze the following factors:

(1) the proximity of creditors of every kind to the Court;

(2) the proximity of the debtor to the Court;

(3) the proximity of the witnesses necessary to the administration of the estate;

(4) the location of the assets;

(5) the economic administration of the estate; and

(6) the necessity for ancillary administration if liquidation should result.

*In re Enron,* 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002).

Among the six factors, courts have often given the most weight to the economic and efficient administration of the estate. *Id.; Commonwealth of Puerto Rico v. Commonwealth of Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1247 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980).

The decision of whether to transfer venue under section 1412 is within a court's discretion based on a case-by-case analysis of equity and convenience. See *In re Manville Forest Products*, *Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990). The burden is on the movants to show by a preponderance of evidence that transfer of venue is warranted. *Id.* at 1390; *In re Éclair Bakery Ltd.*, 255 B.R. 121, 141 (Bankr. S.D.N.Y. 2000); *In re Garden Manor Assoc., L.P.,* 99 B.R. 551, 553 (Bankr. S.D.N.Y. 1988). Transferring venue of a bankruptcy case is not to be taken lightly and a debtor's choice of forum is entitled to great weight if venue is proper. *See Commonwealth Oil Refining Co.*, 596

F.2d at 1241; *In re Ocean Properties of Delaware, Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988); *In re Seton Chase Assoc., Inc.*, 141 B.R. 2, 5 (Bankr. E.D.N.Y. 1992); *In re Vienna Park Properties*, 125 B.R. 84, 87 (S.D.N.Y. 1991).

*Transfer of Venue to Nevada for Convenience of the Parties*

*(i) The Economic and Efficient Administration of the Estate*

The economic and efficient administration of a debtor's estate is considered to be the most important factor in analyzing the convenience of parties; the Court finds that this factor weighs heavily in favor of the Movants.

First, significant issues relating to the various parties' rights are currently being litigated in the Nevada District Court, the Nevada Bankruptcy Court, the Nevada State Court, and the Ninth Circuit Court of Appeals, previously defined as the Nevada Litigation. The Nevada Litigation involves legal issues that must be resolved before the Debtors can effectively reorganize. The issue concerning the Direct Lenders' attempt to terminate the Debtors as the loan servicer under the LSAs, in particular, is determinative of the Debtors' right and ability to operate their core business. Some of these pending disputes have commenced as early as 2007 and many of the legal issues have been extensively briefed and argued by parties. For purposes of efficiency and judicial economy, the substantial learning curve that the Nevada courts have already developed in presiding over these on-going disputes relating to the Debtors' assets weighs in favor of transferring venue to Nevada. Similarly, the parties in interest are accustomed to pursuing their claims and interests in Nevada courts.

Further, as referenced previously, the Nevada Litigation is not collateral litigation that need not be addressed at the early stages of the case. To the contrary, the outcomes

of the Nevada Litigation determine the extent of the Debtors' interest in the assets in dispute and their right to operate a loan servicing business.

The Debtors represent that their plan is principally about preserving value and liquidating real property collateral of the SPEs either by consent of the relevant Direct Lenders or under 11 U.S.C. § 363(h) ("section 363(h)"). It is clear to the Court, however, that a substantial number of the Direct Lenders, as fractional interest holders in the Loans, will seek to be heard on any action taken by the Debtors with respect to the SPEs. As the Debtors conceded at the Hearing, they are not authorized to liquidate collateral of the SPEs unless at least 51% of the Direct Lenders vote to approve the liquidation or this Court approves their motion to sell under section 363(h). Based on the record, the Court finds that many of the Direct Lenders may well continue to oppose actions by the Debtors with regard to the SPEs. The Direct Lenders would also likely object to each and every sale under § 363(h) proposed by the Debtors and appeal at every turn of the Chapter 11 Case. In fact, the Direct Lenders have been the most active group of participants in proceedings related to the servicing of the Loans since USACM's bankruptcy case: they sought to terminate Compass's rights to service the Loans and are now contesting the Debtors' right to service the Loans.

It is alleged in the Debt Acquisition Motion that the legal disputes in Nevada District Court "ha[ve] been characterized by an unusual level of interest and participation by the Direct Lenders, including those not represented by counsel." (Debt Acquisition Motion at 8). It is further alleged that the Direct Lenders not only personally appeared in court proceedings but have also written hundreds of letters to the Nevada District Court to express their views. Given the highly contested history of the Loans and the

constituency of interested parties in this case, the Court finds that the Direct Lenders, consisting of thousands of individuals who may be represented by multiple counsel and/or may appear *pro se,* will likely be the most active participants of this Chapter 11 Case.  Both the parties involved in the Nevada Litigation and the litigation itself will be at the core of any effort by the Debtors to proceed with the case at bar.  As the record indicates that a majority of the Direct Lenders are located either in or near the state of Nevada, the Court finds that for purposes of the Debtors' reorganization plan, efficiency and judicial economy weigh in favor of transferring venue to Nevada.

The Debtors further argue that New York should retain venue because the proposed DIP lender, SMOF-A, LLC ("SMOF-A"), an affiliate of Silar, has conditioned its lending upon the continuation of the Chapter 11 Case in New York.  The Court has never been confronted with a situation, in which a debtor represents that its DIP lender is unwilling to lend if a case has its venue outside of New York.  While potential DIP lenders may well express their views on venue to debtors, presumably this would take place pre-petition and not be brought before the court.  The Court does not doubt that SMOF-A's current position is that it will not provide DIP funding unless venue remains in New York.  However, considering that SMOF-A is an affiliate of the Debtors' parent company and that the Debtors' parent company is the secured creditor of Asset Resolution, one of the Debtors, the Court believes that Silar and/or SMOF-A may well re-evaluate its view once the venue issue is resolved.

Further, the Court has given due deference to the Debtors' choice of venue in New York and the support of the Committee; however, the Debtors' management and professionals would need to appear before Nevada courts to resolve pending litigation

even if the Chapter 11 Case were administered in this Court because a motion to lift the automatic stay to proceed with the Nevada Litigation would likely be granted in the early stages of the case at bar. Thereafter, the Debtors' management and professionals will have to be present in Nevada and/or the Ninth Circuit Court of Appeals to adjudicate pending cases.[5]

Finally, the unsecured creditors appear to be of a diverse geographical base and many of them have already participated in the Nevada Litigation. In response to the Committee's argument that the Debtors should not be compelled to administer the Chapter 11 Case in Nevada where it alleges that it is likely that the interests of unsecured creditors will be overlooked, the Court finds no basis for such assertions.

In sum, in examining the facts of this case and the constituency of the creditors and interested parties, the Court finds that Nevada is the more economic and convenient venue for those whose participation will be required to administer the Debtors' Chapter 11 Case.

*(ii) Proximity of the Debtors*

Proximity of the Debtors weighs in favor of retaining venue in New York, as the Debtors' principal place of business is New York, the Debtors' books and records are kept in New York, and major business decisions are made in New York. Further, the Debtors and their Chief Restructuring Officer ("CRO") have alleged that New York is their preferred choice of venue. Given that the Debtors' choice of venue is entitled to great weight, this factor weighs in favor of retaining venue in New York.

*(iii) Proximity of Witnesses*

---

[5] It appears that Silar, which owns 100% of the Debtors, has been represented by various law firms in litigation against the Direct Lenders in both Nevada and California.

In considering the proximity of witnesses, the Court must first determine the identity of witnesses and parties who will most likely appear before the bankruptcy court in the Chapter 11 Case. The Debtors' CRO will likely be a witness, and she alleges that appearing before a Nevada court throughout the course of this Chapter 11 Case would cause her substantial hardship. Although she currently lives in Utah, the CRO has been traveling to New York frequently in the course of managing the Debtors' business and she intends to rent an apartment in New York if the Chapter 11 Case remains in New York. However, given the close nexus between the Debtors' property rights and the Nevada Litigation, the CRO will most likely be required to appear before Nevada courts regardless of whether the Chapter 11 Case remains in New York.

Besides the CRO, the Direct Lenders are also likely participants who will appear before the bankruptcy court both as potential creditors and as parties in interest. As discussed previously, the Direct Lenders may be represented by multiple counsel and/or may appear *pro se* throughout the course of this Chapter 11 Case. The Moving Direct Lenders allege that a majority of the Direct Lenders, who have actively participated in the Nevada Litigation, live either in or near Nevada. Thus, Nevada is a more convenient venue for the Direct Lenders, none of whom appear to have any nexus to New York but for the purposes of participating in the Chapter 11 Case if it were to remain in New York.

In balancing the interests to parties who will most likely appear before the bankruptcy court in the Chapter 11 Case, the Court finds that this factor weighs in favor of transferring venue to Nevada.

*(iv) Proximity of Creditors*

In considering both the number of creditors and the amount of each claim held by such creditors, the proximity of creditors factor weighs in favor of transferring venue to Nevada. On the one hand, assuming that the Debtors' unsecured creditors do not include the Direct Lenders, this factor would clearly weigh in favor of retaining venue in New York since one-third of the Debtors' 30 largest unsecured creditors are allegedly based in New York or have offices in New York while only two of the 30 largest unsecured creditors have listed addresses in Nevada. On the other hand, assuming that the Direct Lenders are creditors of the Debtors as they allege at the Hearing, then it is clear that this factor would weigh in favor of transferring venue to Nevada for the reasons discussed previously.

Based on the record, the Court views the Direct Lenders as creditors of the Debtors, and thus, finds that this factor weighs in favor of transferring venue to Nevada. Even if the Direct Lenders were not considered to be creditors of the Debtors, in light of the unique circumstances of this case, this factor would not be given significant weight in the Court's overall analysis.

*(v) Location of Assets*

The location of assets factor is largely inapplicable since the Debtors' primary assets are loan servicing rights that are not bound to any geographical location. To the extent that the servicing rights are secured by collateral, such collateral is located in several states throughout the country.

Thus, this factor is insignificant or neutral in determining whether venue transfer is warranted.

*(vi) Necessity of Ancillary Administration*

In considering the necessity of ancillary administration in the event of liquidation, the Court will follow the approach of other courts and find that the consideration of this factor is insignificant and/or inappropriate at this juncture of the case. *See In re Suzanne de Lyon*, *Inc.*, 125 B.R. 863, 869 (Bankr. S.D.N.Y. 1991)(discounting the factor of necessity of ancillary administration as basis for venue transfer if liquidation results); *In re Fairfield Puerto Rico*, *Inc.*, 333 F. Supp. 1187, 1191 (D. Del. 1971).

*Conclusion*

Having considered the totality of the circumstances relevant to the factors most commonly analyzed by courts under 28 U.S.C. § 1412 while giving the most weight to the economic and efficient administration of the estate, the Court finds that the Movants have met their burden by a preponderance of evidence that transfer of venue to the district of Nevada is warranted for the convenience of the parties.[6]

For the foregoing reasons, the Motions to Transfer Venue are hereby GRANTED. A separate order will be entered consistent with this opinion.

Dated: New York, New York
      November 24, 2009

                                      **s/Arthur J. Gonzalez**
                                      ARTHUR J. GONZALEZ
                                      UNITED STATES BANKRUPTCY JUDGE

---

[6] Having decided that the Movants' burden is met under the "convenience of the parties" rationale, the Court will not consider arguments regarding the "interest of justice" prong of the analysis under section 1412 since, as discussed previously, both rationales are independent grounds for transfer of venue.